IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


CLARENCE E.
GRISSOM, JR.,

                    Plaintiff,

          v.                        CASE NO.  09-3128-SAC

RAY ROBERTS,
et al.,

                    Defendants.

### MEMORANDUM AND ORDER

     This civil rights complaint, 42 U.S.C. § 1983, was filed by
plaintiff while he was an inmate of the El Dorado Correctional
Facility, El Dorado, Kansas (EDCF).  He has since been transferred
to the Larned Correctional Mental Health Facility (LCMHF).  The
complaint is a rambling hodgepodge of various grievances on papers
stuck among and to pages of the court-provided forms.  It is not a
short and plain statement of plaintiff's claims in response to
questions on the forms.  See Rule 8, Fed.R.Civ.P.  As a consequence,
neither the claims plaintiff intends to present nor the defendants
he intends to sue are easily discerned.  It appears plaintiff names
as defendants Warden Ray Roberts, EDCF; Correctional Officers at
EDCF including CSI Daniel Jackson, CSII R. Sherman, and COII C.
Castlman (also referred to as Castleman); and "clinic staff" at
EDCF, including Dr. Bokor (also referred to as Boker), A.R.N.P.,
Correct Care Solutions; Dr. George McNickle, and Don Thompkins (also
referred to as Tompkins).  Plaintiff also appears to name "Correct
Care Solutions" and "El Dorado Minimum Clinic" as defendants.

**FACTUAL BACKGROUND**

As the factual basis for his complaint, Mr. Grissom alleges that the following events occurred at the EDCF on August 27, 2008. Defendants Jackson and Castlman told him to come to his cell door to be restrained while they removed a wheelchair[1] from his cell. He claims the wheelchair was removed based upon false allegations. He resisted the orders, responded obscenely, and threw a cup of water, striking Jackson on the arm. Jackson sprayed Grissom with pepper spray, stating it was necessary to subdue Grissom. Plaintiff claims defendant Jackson knew the use of pepper spray "was objectively harmful" due to plaintiff's "C.O.P.D.", and that plaintiff couldn't breathe. He claims Jackson "retaliated" by "calling Condition 30", which resulted in a "forced cell move" by a team. Mr. Grissom was tackled by "the team", and carried to the shower where he was held under hot water causing him to choke. He suffered a broken nose and several small abrasions and bruises on his face. He was placed on a mattress in a segregation cell and his underwear was cut off "so the Dr. Boker, A.R.N.P." could give him "three hites" of "the Albuterol inhaler." Dr. Bokor looked at his face, but walked away and provided no medical treatment. Both Grissom's eyes were black and blue, his right eye was swollen shut the next day, and pictures were taken of his face. He requested medical treatment, but it was denied "by the officers on shift."

Plaintiff additionally alleges that defendants Jackson,

---

[1]     Plaintiff alleges defendant Bokor directed defendant Jackson to remove the wheelchair. He states that he called Bokor obscene names, and she retaliated by falsely alleging he was standing on the wheelchair. At the same time, he questions who made the allegation of standing on his chair and alleges "his comments" were directed to his neighbor, but Dr. Bokor thought they were directed at her.

Castlman, and Bokor "made a false disciplinary report to cover up" the incident.   Grissom was charged with battery and disobeying orders.   He was found guilty and sanctioned with 60 days of disciplinary segregation, fines of $40, and 90 days "L.G.T."

Plaintiff exhibits a grievance he filed alleging excessive use of force.   The Unit Team responded that the grievance procedure shall not be used for disciplinary procedure or personal injury claims.

## CLAIMS AND REQUESTED RELIEF

Plaintiff raises three main claims in his complaint: (1) use of excessive force on August 27, 2008 at the EDCF, (2) denial of medical care for injuries resulting from this incident, and (3) the charging of a false disciplinary report to cover up this incident. He seeks "a formal resolution" and "nominal with punitive damages as well as compensatory damages for pain and suffering."

In a page attached to his complaint, Grissom also requests that "the officer's (sic) who beate (sic) me be fired" and Dr. Bokor be removed from the Department of Corrections.  However, the removal or firing of state employees is not relief this court has authority to provide.   Accordingly, these two particular claims for relief are denied.

## OTHER FILINGS AND MOTIONS

As noted, plaintiff attached many papers within and to his complaint, which made his initial pleading 58 pages long.  While the court has discretion to consider any attachment to the complaint as

part of the complaint, plaintiff's attachments contain many statements that are not related to the counts in the form complaint. The court considers only those claims raised in Mr. Grissom's form complaint, and not matters referred to only in his attachments[2].

Since filing his complaint, Mr. Grissom has submitted numerous additional documents.  One filing (Doc. 5) has no case caption or number[3] on the front page, but just the word "Exhibits".  It contains 55 pages, some of which are duplicates of pages already submitted.  These "Exhibits" were accepted for filing despite their deficiencies and the fact that plaintiff provides no reason for their submission.  However, plaintiff is advised that it is not appropriate for him to submit evidence until after his complaint has

---

[2]    Grissom's attachments include exhibits, statements and a grievance regarding a claim that his mail was being censored or not delivered.  He did not include this as a count in his complaint, and no proper amendment has been filed. Even if he intended to include it, this claim is improperly joined, because it does not relate to the claims in the complaint and does not allege acts on the part of any named defendant.  Nor does plaintiff state any dates or other facts with respect to particular mail incidents.

In another attached page, plaintiff alleges he would like to have his wheelchair, but they are not allowed in segregation for security reasons.  Even if he intended this as an additional claim, it is improperly joined, no defendant is named, and no facts are stated to support a constitutional violation.

Other attached exhibits are grievances Grissom filed seeking assistance with preparing and filing legal papers or access to a law library.  Again, this claim is not properly joined in this action, involvement of a named defendant is not alleged, and no facts are stated showing plaintiff has actually been denied access to the courts.  To state such a claim, the inmate must allege something more than that the prison's law library or legal assistance program is inadequate.  He must "go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim," causing him "actual injury." Lewis v. Casey, 518 U.S. 343, 348, 350 (1996).  He may do so by alleging actual prejudice to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim, or that a nonfrivolous legal claim has been dismissed, frustrated or impeded. Id. at 350, 353.  Plaintiff makes no such allegation of actual injury.  Moreover, the voluminous materials he has managed to submit in this case discredit any denial of access claim.

[3]    Mr. Grissom is directed to place the case caption and number on the first page of every document submitted by him in this matter, and to include a descriptive title of the document on the first page as well.  The title should suggest what court action is requested in the motion, for example, "Motion for Extension of Time".  The clerk has no duty to parse every page of materials submitted in order to interpret what sort of motion plaintiff intends to file, if any.

survived screening and the time has come for him to provide proof of his allegations.  These exhibits are relevant only insofar as they relate to claims raised in Mr. Grissom's complaint[4].

The court must impress upon plaintiff that he may not add claims or defendants to his complaint without filing a proper "Amended Complaint".  In order to add any claim or defendant that was not raised or named in the original complaint, a plaintiff must file an "Amended Complaint".  See Fed.R.Civ.P. Rule 15.  An Amended Complaint completely supercedes the original complaint, and therefore must contain all claims the plaintiff intends to pursue in the action, including those presented in the original complaint. Any claims not included in the Amended Complaint are not considered.  Plaintiff has not filed an Amended Complaint and has not properly added claims or defendants to his original complaint by simply filing a motion, exhibit, or other paper pertaining to possible, additional claims.

Plaintiff has submitted two Motions for Temporary Restraining Order.  The first (Doc. 4) is actually correspondence to the Clerk of the Court, in which Mr. Grissom wrote he is "requesting for injunction or t.r.o." to allow him to prepare his legal papers without interruption "by defendants" and inmates pounding on walls. He complains that two prison officials, not named defendants, have refused to control "the disturbance" in segregation[5].  This is not

---

[4]     A few of these exhibits are copies of grievances and reports pertaining to plaintiff's chronic medical conditions and other disciplinary incidents.  Claims regarding these matters have not been added by plaintiff simply sending in documents relating to them.  Only those exhibits that relate to plaintiff's claims regarding the August 27, 2008 incident and the resulting disciplinary action are considered herein.

[5]     This is a different, and thus a separate, claim from any raised in plaintiff's complaint.  Moreover, the persons involved are not defendants.

the proper form for a motion.   Nevertheless, it has been very liberally construed as a motion for injunction or TRO.   The only relief requested, however, is a transfer to Lansing Correctional Facility "for (plaintiff's) protection until" he appears in court. The court finds no factual or legal basis for the requested relief is stated in this motion, and it is denied.

Plaintiff's second "Motion for T.R.O. and Protection" (Doc. 7) is also denied.   In this motion, plaintiff baldly states he was forced to transfer to LCMHF "so he would not be able to attend" court. He alleges he has been harassed and threatened twice by "the defendant" since he filed this complaint.   He also alleges his "personal property" has been taken so he wouldn't file "the other two complaints on the defendants".   The relief requested is "protection from the court for his safty (sic)." This motion states no facts whatsoever upon which this court could issue a restraining order against defendants.   Plaintiff does not even allege that either his transfer or the alleged taking of his property was caused by a named defendant acting in an unconstitutional manner.   He mentions two other complaints, but does not include sufficient facts to state a claim of denial of court access.   In any event, plaintiff has not properly amended his complaint to include a claim regarding legal property or denial of court access, and this motion is denied.

Plaintiff filed a "Motion for "KAS-Kan 60-905-9069(3)(4)." The title on this motion makes no sense.   It was entered on the docket by the clerk as "Exhibit in Support of Complaint" (Doc. 8).   In the body of this document, plaintiff states he has been denied his "personal property and legal material and assistent (sic) to the court" or to an attorney at LCMHF by persons not named as defendants

in this action "by the order of EDCF".  He also states he is
indigent and cannot "pay for postage for (his) minister or legal
mail."  Plaintiff attaches a notice from the mailroom that a letter
was not sent due to "not enough postage" and omission of his inmate
number.  The court repeats that plaintiff may not add claims
regarding legal access and mail handling by simply making bald
allegations in a motion and without filing an Amended Complaint.  In
any event, these claims occurred at LCMHF and do not appear to be
related to those in the original complaint or to involve the named
defendants.  It follows that they may not be properly joined in this
action[6].  In order to litigate these claims in federal court,
plaintiff must file separate civil rights complaints.  The court
finds this is a motion, rather than an exhibit supporting the
complaint, and that no factual or legal basis for the motion is

---

[6]    The Federal Rules of Civil Procedure (FRCP) provide rational limits
upon the parties and claims that may be litigated in a single action.  FRCP Rule
20(a)(2) governs permissive joinder of defendants and pertinently provides:

> (2) Defendants.  Persons . . . may be joined in one action as
> defendants if: (A) any right to relief is asserted against them
> jointly, severally, or in the alternative with respect to or arising
> out of the same transaction, occurrence, or series of transactions or
> occurrences; and (B) any question of law or fact common to all
> defendants will arise in the action.

Id.  FRCP Rule 18(a) governs joinder of claims and pertinently provides: "A party
asserting a claim . . . may join, as independent or alternative claims, as many
claims as it has against an opposing party."  While joinder is encouraged for
purposes of judicial economy, the "Federal Rules do not contemplate joinder of
different actions against different parties which present entirely different
factual and legal issues."  Zhu v. Countrywide Realty Co., Inc., 160 F.Supp.2d
1210, 1225 (D.Kan. 2001)(citation omitted).
    The Court of Appeals for the Seventh Circuit has held that under "the
controlling principle" in FRCP Rule 18(a), "[u]nrelated claims against different
defendants belong in different suits."  George v. Smith, 507 F.3d 605, 607 (7th
Cir. 2007).  Under Rule 18(a), "multiple claims against a single party are fine,
but Claim A against Defendant 1 should not be joined with unrelated Claim B
against Defendant 2."  Id.
    Requiring adherence in prisoner suits to the federal rules regarding joinder
of parties and claims prevents "the sort of morass [a multiple claim, multiple
defendant] suit produce[s]."  Id.  It also prevents prisoners from "dodging" the
fee obligations and the three strikes provisions of the Prison Litigation Reform
Act.  Id.  (FRCP Rule 18(a) ensures "that prisoners pay the required filing fees--
for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or
appeals that any prisoner may file without prepayment of the required fees.").

presented.

Plaintiff submitted another pleading with no title, which the clerk docketed as "Affidavit in Support of Complaint" (Doc. 9).  In this filing, plaintiff states he was placed in segregation at LCMHF and complains of limited privileges.  He also mentions that he and other inmates were banging on the walls, and the "official" refused to correct the problem.  He describes an incident of being removed from his cell in June, 2009.  The court repeats that plaintiff may not add defendants or claims based upon unrelated subsequent events for litigation in this case without filing an Amended Complaint.  Mr. Grissom also states that he has been harassed and threatened "by different defendants."  However, the persons he mentions are not defendants named in the original complaint.  He also states he was sent to LCMHF by "defendants" to "cover up".  This claim is completely conclusory.  Plaintiff does not request any relief in this filing, and the allegations support none of the claims in the original complaint.  The court finds that this filing is not a proper Amended Complaint, presents no legal or factual basis for relief in this case, and must be denied.

Plaintiff has recently filed Document 10, which has no title, and simply begins he "states as following".  He alleges he was placed in segregation at LCMHF to keep him separate from another inmate, but "staff member" from segregation review board falsely stated the other inmate was there.  He complains that he has no way to contact someone for medical assistance for his COPD, and of a lack of therapy and counseling programs.  He also claims that since his arrival at LCMHF he has been denied "treatments recommended by the prison officials", and will have to serve "his full term" in

segregation.   This document is not a proper motion or an Amended Complaint, and does not request any relief.   In any event, allegations in this filing involve occurrences at LCMHF that are not related to the complaint filed herein, and do not involve the named defendants[7].  Thus, they may not be properly joined in this action.

Plaintiff has also recently submitted several more exhibits with no cover sheet and no statement as to their purpose.  None of these exhibits, which concern plaintiff's segregation and his administrative request for protection from other inmates at EDCF, relates to the instant complaint.  He also sent a second letter to the Clerk of the Court stating facts not related to the complaint. The court will not consider any improperly submitted, unrelated claims in these papers.

Plaintiff is directed to refrain from submitting improper motions and papers.  He wastes the court's limited resources by submitting a continuous stream of improper filings, and has impeded the orderly processing of this and other actions.  If events occur giving rise to federal constitutional claims that are not related to the August  2008 incident on which the original complaint is based, then plaintiff, as noted, must file a separate complaint against the person or persons responsible for any such unconstitutional acts and set forth facts supporting those claims[8].

---

[7]    To raise these claims in federal court, plaintiff must file a separate civil rights complaint. In that complaint, he must allege dates, names of persons who actually denied him medical treatment or made decisions regarding his retention or conditions in segregation, and other pertinent facts in support. Furthermore, any new complaint filed by Mr. Grissom in federal court must be on forms obtained by him from the clerk of the court, and he must carefully and fully complete those forms.

[8]    Plaintiff is cautioned that under 28 U.S.C. § 1915, he will be held responsible for paying court fees of $350.00 for each civil complaint he files. In addition, Section 1915(g) of 28 U.S.C. provides:

## APPLICATION TO PROCEED IN FORMA PAUPERIS

Plaintiff has properly filed two Applications to Proceed in forma pauperis (Docs. 2 & 3), and has attached an Inmate Account Statement in support to Doc. 3 as statutorily mandated.   Under 28 U.S.C. § 1915(b)(1), a plaintiff granted such leave is not relieved of the obligation to pay the full fee of $350.00 for filing a civil action.   Instead, being granted leave to proceed in forma pauperis merely entitles an inmate to proceed without prepayment of the full fee, and to pay the filing fee over time through payments deducted automatically from his inmate trust fund account as authorized by 28 U.S.C. § 1915(b)(2).   Furthermore, § 1915(b)(1), requires the court to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposits or average monthly balance in the prisoner's account for the six months immediately preceding the date of filing of a civil action.   Having examined the records of plaintiff's account, the court finds the average monthly deposit during the relevant period is certified as $ 11.02, and the average monthly balance as $.71.   However, the court further finds that these figures, apparently computed by the finance officer at EDCF,

---

In no event shall a prisoner bring a civil action . . . or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action . . . in a court that is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Id.   If the court were to treat as a strike each unrelated claim improperly discussed in the many materials submitted by plaintiff herein, he would have well over three strikes from this case alone.   He would then be required to "pay up front for the privilege of filing . . . any additional civil actions," unless he could show "imminent danger of serious physical injury."   28 U.S.C. 1915(g); Jennings v. Natrona County Detention Center, 175 F.3d 775, 778 (10th Cir. 1999); see also Ibrahim v. District of Columbia, 463 F.3d 3, 6 (D.C. Cir. 2006)("Congress enacted the PLRA primarily to curtail claims brought by prisoners under 42 U.S.C. 1983 and the Federal Tort Claims Act, most of which concern prison conditions and many of which are routinely dismissed as legally frivolous.").

are incorrect.  Plaintiff's average monthly deposit was actually less than $5.00, because for three of the six months he had deposits of $0.  The total deposits of $33.05 were mistakenly divided only by the 3 months in which there were deposits.  They should have been divided by all 6 months to calculate the average monthly deposit.  The court concludes that Mr. Grissom does not at this time have sufficient funds to pay an initial partial filing fee, and shall be granted leave to proceed without prepayment of fees[9].

**SCREENING**

Because Mr. Grissom is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A(a) and (b).  In reviewing the sufficiency of the complaint, the factual allegations are broadly construed, presumed as true, and read in the light most favorable to the plaintiff.  Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).  However, this "broad reading" of pro se complaints "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Id. at 1110.  "The complaint must plead sufficient facts, that when taken as true, provide 'plausible grounds' that 'discovery will reveal evidence' to support plaintiff's allegations." Gann v. Cline, 519 F.3d 1090,

---

[9]       Pursuant to §1915(b)(2), the Finance Office of the facility where plaintiff is confined is directed by copy of this Order to collect twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until the $350.00 filing fee has been paid in full.  Plaintiff is directed to cooperate fully with his custodian in authorizing disbursements to satisfy the filing fee, including but not limited to providing any written authorization required by the custodian or any future custodian to disburse funds from his account.

1092 (10th Cir. 2008)(quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (1965).  The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  <u>Whitney v. New Mexico</u>, 113 F.3d 1170, 1175 (10th Cir. 1997).  Having screened all materials filed, the court finds the complaint in this case is subject to being dismissed for the following reasons.

<u>**DEFENDANTS**</u>

Defendants "Correct Care Solutions" and "El Dorado Minimum Clinic" are clearly subject to being dismissed from this action for the reason that neither is a "person" subject to suit under Section 1983.  <u>See</u> <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 66, 71 (1989)(neither state nor state agency is a "person" which can be sued under Section 1983); <u>Davis v. Bruce</u>, 215 F.R.D. 612, 618 (D.Kan. 2003), <u>aff'd in relevant part</u>, 129 Fed.Appx. 406, 408 (10th Cir. 2005).

An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based.  <u>Trujillo v. Williams</u>, 465 F.3d 1210, 1227 (10th Cir. 2006)(A defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established); <u>Mitchell v. Maynard</u>, 80 F.3d 1433, 1441 (10th Cir. 1996); <u>Olson v. Stotts</u>, 9 F.3d 1475, 1477 (10th Cir. 1993)(affirming district court's dismissal where "plaintiff failed to allege personal participation of the defendants").  Plaintiff does not allege any personal participation in the incidents upon which his complaint is based by defendants

Roberts, McNickle, Thompkins, or Sherman.  He may not recover money damages or other relief from these individuals unless he describes acts demonstrating their personal participation.

**"SUPPLEMENT TO COMPLAINT" REQUIRED**

Plaintiff will be given time to file a "Supplement to Complaint" in which he must allege additional facts, not legal conclusions or citations, showing the personal participation of each of these defendants in the events underlying the claims in his original complaint[10].  If he fails to provide the requisite additional facts, this action will be dismissed as against these defendants.

**EXCESSIVE FORCE CLAIMS**

Court's generally analyze a prisoner's claim of excessive force under the Eighth Amendment's cruel and unusual punishment clause[11]. The United States Supreme Court has held that in considering claims of excessive force brought by convicted prisoners, a court must apply the standard set forth in Whitley v. Albers, 475 U.S. 312, 320-22 (1986), namely, "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously or sadistically to cause harm."  Id.; Hudson v. McMillian, 503 U.S. 1,

---

[10]     This document must have the full caption of this case on the top sheet along with the case number of this case.  It must also have the title "Supplement to Complaint" on the top page.

[11]     The Eighth Amendment, which proscribes the infliction of cruel and unusual punishment and, more specifically, the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners in cases where the deliberate use of force is challenged as excessive and unjustified.  Rochin v. California, 342 U.S. 165, 172, 173 (1952).  The Eighth Amendment is applicable to the states through the Fourteenth amendment's due process clause.

7 (1992).   In _Whitley_, the Court stated that, "[a]fter incarceration, only the 'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment (citations omitted)."   _Whitley_, 475 at 319. Relevant factors to be considered include (1) the need for the application of force; (2) the relationship between the need and amount of force used; and (3) the extent of injury inflicted.   _Id_. at 320-21; _see also_ _Smith v. Cochran_, 339 F.3d 1205, 1212 (10th Cir. 2003).   In _Sampley v. Ruettgers_, 704 F.2d 491 (10th Cir. 1983), the Tenth Circuit Court of Appeals set forth three factors for courts to include in their review of excessive force claims.   Under _Sampley_, the inmate must demonstrate that (1) the guard intended to harm the prisoner; (2) the guard used more force than reasonably necessary to maintain or restore institutional order; and (3) the guard's actions caused severe pain or lasting injury to the prisoner[12].   _Id_. at 495.

These standards are sensitive to the "highly-charged prison environment."   Not every isolated battery or injury to an inmate

---

[12]      In _Sampley_, the Tenth Circuit reasoned:

A prison guard's use of force against an inmate is "cruel and unusual" only if it involves "the unnecessary and wanton infliction of pain." _Gregg v. Georgia_, 428 U.S. 153, 173 (1976). We think that this standard imposes three requirements for an inmate to state a cause of action under the eighth amendment and section 1983 for an attack by a prison guard. First, "wanton" requires that the guard have intended to harm the inmate. Second, "unnecessary" requires the force used to have been more than appeared reasonably necessary at the time of the use of force to maintain or restore discipline. Third, "pain" means more than momentary discomfort; the attack must have resulted in either severe pain or a lasting injury.

* * *

A court should also bear in mind that a prison guard, to maintain control of inmates, must often make instantaneous, on-the-spot decisions concerning the need to apply force without having to second-guess himself. _See_ _Wolff v. McDonnell_, 418 U.S. 539, 566-67 (1974).

_Sampley_, 704 F.2d. at 494-96.

14

amounts to a federal constitutional violation.  <u>See Hudson</u>, 503 U.S. at 9 (Not "every malevolent touch by a prison guard gives rise to a federal cause of action."); <u>Smith v. Iron County</u>, 692 F.2d 685 (10th Cir. 1982)(A prison guard's use of force against a prisoner is not always a constitutional violation.); <u>El'Amin v. Pearce</u>, 750 F.2d 829, 831 (10th Cir. 1984)(While an assault by a jailer on his prisoner can give rise to an action under section 1983, a jailer's use of force against a prisoner is not always a constitutional violation.); <u>see also Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir.)("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."), <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u>. <u>John v. Johnson</u>, 414 U.S. 1033 (1973).  A prison guard's use of force is entitled to deference by the courts because their decisions are made "in haste, under pressure, and frequently without the luxury of a second chance."  <u>Hudson</u>, 503 U.S. at 6; <u>Whitley</u>, 475 U.S. at 320.

### 1.  Use of Pepper Spray and Forced Cell Move

Considering plaintiff's allegations regarding pepper spray, the court finds they fail to state a claim of excessive force.  No facts are alleged indicating Jackson's use of pepper spray on plaintiff was malicious and sadistic for the very purpose of harming plaintiff, or amounted to more force than reasonably necessary to restore institutional order.  Instead, the facts plaintiff alleges suggest "force was applied in a good faith effort to maintain or restore discipline".  Plaintiff's own exhibits and statements indicate he was combative, disruptive, and very disrespectful at the time of the incident, and he refused to obey orders.  They further

indicate that defendant Jackson used pepper spray saying it was necessary to subdue Grissom, who had a history of battering or attempting to batter correctional officers, refused to be restrained and had thrown a cup of water on Jackson.  Mr. Grissom's actions were clearly contrary to the legitimate penological interest of maintaining control and discipline in the prison facility.  Under such circumstances, the use of some physical force such as pepper spray can hardly be considered repugnant to the conscience of mankind.  Nor are any facts alleged showing Jackson's use of pepper spray caused severe pain or lasting injury to Mr. Grissom[13].  Cf. Whitley, 475 U.S. at 320-321; Sampley, 704 F.2d at 494-496.  Thus, even assuming the truth of plaintiff's factual allegations in his complaint, the court finds he has not alleged sufficient facts to state a federal constitutional violation with regard to pepper spray.

Nor does plaintiff's conclusory claim that Jackson used excessive force by calling a "Condition 30", which resulted in a forced cell move, suggest any unconstitutional act on Jackson's part[14].

## 2.  Claims of physical injuries

Plaintiff alleges he was "tackled", carried, and held in a shower under hot water by "the team".  He further alleges he was

---

[13]   It is not enough for plaintiff to allege that he had difficulty breathing and choked under water in the shower.  Pepper spray purposefully produces such uncomfortable effects, and showers are commonly used to douse its effects.  Plaintiff does not allege that a doctor had prohibited the use of these common security measures on him.

[14]   In support, plaintiff alleges only that defendant Jackson "retaliated" by calling for a team.  This claim of retaliation is not supported by any facts whatsoever, and is dismissed for that reason.

removed from his cell and placed on a mattress in a segregation cell and his underwear was cut off so the doctor could give him "three hites" of "the Albuterol inhaler." These facts, taken as true, can hardly be considered "repugnant to the conscience of mankind."

However, plaintiff's additional allegations that he suffered a broken nose and several small abrasions and bruises on his face during these events are far more serious. Nevertheless, to recover money damages from an individual based upon these alleged injuries, Mr. Grissom must describe the acts of the particular defendant or defendants that actually resulted in these injuries. He does not describe acts by a specific, named defendant that resulted in his suffering a broken nose and facial lacerations.

As noted, Mr. Grissom is herein given time to file a "Supplement to Complaint". In this Supplement, he must specify the particular defendant or defendants whose acts directly caused his physical injuries, and describe those acts[15]. If he fails to do so in the time provided, this claim may be dismissed without further notice for failure to sufficiently allege the personal participation of any named defendant in causing his injuries.

**DENIAL OF MEDICAL TREATMENT**

The United States Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate

---

[15]     If Mr. Grissom was beaten by a group of officers during the cell move on August 27, 2008, and ended up with these injuries, then he must name each of the officers in the group that he believes participated in the beating. If only one or some of the officers moving him struck him or otherwise used excessive force, then he must specify only those defendants and describe their personal acts.

indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).   The "deliberate indifference" standard has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." Miller v. Glanz, 948 F.2d 1562, 1569 (10th Cir. 1991); Martinez v. Garden, 430 F.3d 1302, 1304 (10th Cir. 2005).   To satisfy the objective component, the inmate must show the presence of a "serious medical need," that is, "a serious illness or injury." Estelle, 429 U.S. at 104, 105; Farmer v. Brennan, 511 U.S. 825, 834 (1994).   A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980); Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999). To satisfy the subjective component, the inmate must show that the prison official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm" existed, and he drew that inference.   Martinez, 430 F.3d at 1305 (citing Riddle v. Mondragon, 83 F.3d 1197, 1204 (10th Cir. 1996)(quotation omitted)).

A mere difference of opinion between the inmate and the medical care provider over the adequacy of medical treatment provided is not an adequate basis for an Eighth Amendment claim.   El'Amin, 750 F.2d at 829; Jones v. McCracken, 562 F.2d 22 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112 (10th Cir. 1976);   see Estelle, 429 U.S. at 106-07 (A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does

not constitute cruel and unusual punishment.); <u>Handy v. Price</u>, 996 F.2d 1064, 1067 (10th Cir. 1993).  The prisoner's right is to necessary medical care- not to the type or scope of medical care he personally desires or believes is needed.

Moreover, negligent failure to provide adequate medical care is medical malpractice, and does not state a federal constitutional claim.  As the United States Supreme Court has explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind."  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medial mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

<u>Estelle</u>, 429 U.S. at 105-106 (footnote omitted).  Negligence by prison medical staff or medical malpractice is a state tort cause of action and must be litigated in state court.

Furthermore, delay in providing medical care does not violate the Eighth Amendment, unless there has been deliberate indifference resulting in substantial harm.  <u>Olson v. Stotts</u>, 9 F.3d 1475 (10th Cir. 1993).  In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires that the inmate suffer "substantial harm" as a result of the delay.  <u>Garrett v. Stratman</u>, 254 F.3d 946, 950 (10th Cir. 2001).

In support of his denial of medical treatment claim, plaintiff alleges he suffered a broken nose and several small abrasions and bruises on his face; that his eyes were black and blue and his right

eye was swollen shut the next day; and that defendant Dr. Bokor provided no treatment on the day of the injuries.  He also states that he requested medical treatment the next day, but it was denied "by the officers on shift."

Taking these factual allegations as true, while disregarding plaintiff's mere conclusory statements, the court again finds plaintiff fails to state sufficient facts to support a federal constitutional claim.  Mr. Grissom's allegations and exhibits indicate that he was given inhaler medication and his nose and facial injuries were examined by Dr. Bokor at the time of the incident.  He does not describe any additional treatment as having been prescribed or obviously necessary for his broken nose or facial abrasions on that date, which Dr. Bokor should have provided.  Nor has he described any "substantial harm" suffered as a result of any possible delay in treating his broken nose or facial injuries. Furthermore, he does not allege that the shift officer who denied his request for medical treatment the next day is one of the named defendants.

As noted, plaintiff is being given time to file a "Supplement to Complaint."  Therein, he must allege what treatment he needed for his nose and face that was not provided by Dr. Bokor, and specify which named defendant was the shift officer who actually denied his request for treatment the day after the incident.  If plaintiff fails to provide such additional facts to support his claim of denial of medical treatment, it shall be dismissed for failure to state sufficient facts in support of an Eighth Amendment violation.

**CLAIMS REGARDING DISCIPLINARY ACTION**

Plaintiff alleges that defendants Jackson, Castlman, and Bokor "made a false disciplinary report to cover up" the August 27, 2008, incident.  As noted, Grissom was charged with battery and disobeying order, and sanctioned with 60 days of disciplinary segregation, a fine, and 90 days "L.G.T."

In support of this claim, Mr. Grissom alleges that he did not refuse to participate in the disciplinary hearing on September 4, 2008, and informed the hearing officer that he was not guilty.  He exhibits copies of documents entitled "Disposition of Disciplinary Case", which indicate that on September 4, 2008, he stated, "[t]hey are gonna cripple me" and "[t]hey broke my nose and my chin bone" and then declined to participate further; "Staff Assistance" was appointed but had no questions for the reporting officer; and "I/M found guilty on Officers Report."  He also exhibits EDCF "Administrative Segregation Report" dated August 27, 2008, which provided reasons for his segregation including that he "battered staff", refused to be restrained, struck the door with a hairbrush for 5-10 minutes while yelling obscenities, and flooded his cell. The Report also mentions plaintiff's "frequent attempted batteries of staff", immature outbursts, constant whining and disruptive behavior.  Plaintiff wrote obscene remarks on the Report as his "statement."

Since this claim involves good time and the possibility of entitlement to a speedier release, it is not properly raised in this civil rights complaint.  Instead, it may only be raised in a separately filed petition for writ of habeas corpus.  <u>Preiser v.</u>

Rodriguez, 411 U.S. 475 (1973)[16].  In addition, before a habeas corpus petition may be filed in federal court, Mr. Grissom must have fully presented his claims regarding the challenged disciplinary action to the state courts.  28 U.S.C. § 2254; Duncan v. Gunter, 15 F.3d 989, 991 (10th Cir. 1994).

Furthermore, plaintiff's claim for money damages based upon allegations of false disciplinary proceedings is premature.  The United States Supreme Court has held that when a state prisoner seeks damages in a § 1983 suit based on an alleged invalid conviction, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Heck v. Humphrey, 512 U.S. 477, 487 (1994).  Heck was followed by Edwards v. Balisok, 520 U.S. 641 (1997), which extended Heck's principles to the prison setting and the loss of good time credit.  See also Beck v. Muskogee Police Dep't, 195 F.3d 553, 557 (10th Cir. 1999).

Mr. Grissom seeks to challenge the validity of disciplinary findings and sanctions against him that include loss of good time.  However, he does not demonstrate that the guilty findings have been invalidated through proper process.  He may not recover money damages based upon these challenges unless and until the administrative proceedings in which he was found guilty have been

---

[16]   In Preiser, inmates who lost good time credits through prison disciplinary action sued under § 1983 for restoration of those credits.  Preiser "held that habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release. . . ." Id. at 488-490; Heck, 512 U.S. at 481-82 (explaining Preiser).

overturned by proper administrative appeal or in the state courts. Accordingly, his claims of false disciplinary proceedings must be dismissed, without prejudice.

**SUMMARY**

In sum, the court finds that plaintiff has submitted voluminous amounts of papers and allegations, many of which are not relevant to the claims raised in his complaint, and has nonetheless failed to present sufficient factual allegations to state a federal constitutional violation[17].   Plaintiff is given the opportunity to correct deficiencies found in his complaint by filing a "Supplement to Complaint".   If he refuses or fails, this action will be dismissed as a result.

**IT IS THEREFORE ORDERED** that plaintiff's Motions for Leave to Proceed in forma pauperis (Doc. 2 & 3) are granted.

**IT IS FURTHER ORDERED** that plaintiff is granted thirty (30) days in which to file a "Supplement to Complaint" in this case stating additional facts showing the personal participation of defendants Roberts, McNickle, Thompkins, and Sherman in the events of August 27, 2008, or they will be dismissed from the case.

**IT IS FURTHER ORDERED** that within the same 30-day period, plaintiff must supplement his complaint by stating additional facts to support his claims of excessive force and denial of medical treatment for the resulting injuries, or they will be dismissed for

---

[17]     Plaintiff's filings include numerous unnecessary legal citations.  The pro se plaintiff's main task is to set forth the facts he believes entitle him to relief in federal court.

failure to state sufficient facts to support a federal constitutional claim.

**IT IS FURTHER ORDERED** that this action is dismissed and all relief is denied as against defendants "Correct Care Solutions" and "El Dorado Minimum Clinic".

**IT IS FURTHER ORDERED** that plaintiff's claims for relief to remove and fire defendants from their employment are denied.

**IT IS FURTHER ORDERED** that plaintiff's claims of false disciplinary proceedings are dismissed, without prejudice, as premature under <u>Heck</u> and <u>Balisok</u>.

**IT IS FURTHER ORDERED** that plaintiff's motions, claims and requests, if any, contained in Documents 4, 5, 7, 8, 9, 10, and 11 are denied.

The clerk is directed to transmit a copy of this Memorandum and Order to the finance officer where plaintiff is currently confined.

**IT IS SO ORDERED.**

Dated this 24th day of August, 2009, at Topeka, Kansas.

<u>s/Sam A. Crow</u>
U. S. Senior District Judge

24