**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**CLARENCE E.**
**GRISSOM, JR.,**

        **Plaintiff,**

        v.                  **CASE NO. 09-3128-SAC**

**RAY ROBERTS,**
**et al.,**

        **Defendants.**

**O R D E R**

Upon screening this civil rights complaint, the court entered a Memorandum and Order dismissing some claims and defendants (Doc. 12)(hereinafter SCRNORD). It also set forth deficiencies in the Complaint and granted plaintiff time to file a "Supplement" to state additional facts sufficient to support his remaining constitutional claims. The matter is before the court upon plaintiff's responses and other motions and materials filed by him since the SCRNORD.

The Complaint is based upon an incident that allegedly occurred on August 27, 2008, at the El Dorado Correctional Facility, El Dorado, Kansas (EDCF).[1] In its SCRNORD, the court found that plaintiff had raised three claims in his Complaint: (1) use of excessive force on August 27, 2008, at the EDCF; (2) denial of medical care for injuries sustained in this incident; and (3) the charging of a false disciplinary report to cover up this incident. The court construed claim (3) as a challenge to the disciplinary

---

[1] Plaintiff was transferred to the Larned Mental Health Correctional Facility, Larned, Kansas (LMHCF) nearly a year after the alleged incident. His own exhibits indicate he was transferred pursuant to a hearing and due to mental health considerations.

action that was taken against plaintiff and dismissed the claim as properly brought only in a habeas corpus petition. The court further held that plaintiff's civil rights claim for damages based on his challenge to this disciplinary action is barred by Heck v. Humphrey, 512 U.S. 477, 487 (1977), and its progeny, unless and until the disciplinary action is overturned.

Another deficiency pointed out in the SCRNORD was that plaintiff had not alleged the direct personal participation in the underlying unconstitutional acts by defendants Roberts, McNickle, Thompkins, or Sherman. Plaintiff was ordered to describe their personal participation, or suffer dismissal of the complaint as against these defendants. The court finds no mention of defendants Dr. George McNickle, Don Thompkins, or CSII R. Sherman in the voluminous materials filed by plaintiff since the SCRNORD. The court also finds that, even though plaintiff mentions defendant Warden Roberts, he does not allege facts showing that Roberts personally participated in the events of August 27, 2008. The court concludes that, for the reasons stated in the SCRNORD, these defendants are dismissed from this action due to plaintiff's failure to allege facts showing their personal participation in the acts upon which the Complaint is based.

In the SCRNORD, the court set forth the legal standards governing plaintiff's claims of excessive force and denial of medical treatment and held that he had not alleged sufficient facts in his Complaint to support a claim of cruel and unusual punishment under the Eighth Amendment. He was ordered to file a "Supplement to Complaint" providing sufficient additional facts to support these claims or suffer their dismissal. The court made the following

2

additional findings and gave plaintiff explicit directions as follows:

> The court considers only those claims raised in Mr. Grissom's form complaint, and not matters referred to only in his attachments. . . .
>
> [P]laintiff is advised that it is not appropriate for him to submit evidence until after his complaint has survived screening and the time has come for him to provide proof of his allegations. . . .
>
> The court must impress upon plaintiff that he may not add claims or defendants to his complaint without filing a proper "Amended Complaint." In order to add any claim or defendant that was not raised or named in the original complaint, a plaintiff must file an "Amended Complaint." . . . Plaintiff has not filed an Amended Complaint and has not properly added claims or defendants to his original complaint by simply filing a motion, exhibit, or other paper pertaining to possible, additional claims.
>
> * * *
>
> The court repeats that plaintiff may not add defendants or claims in this case without filing an Amended Complaint.

SCRNORD at 3-5, 8. After carefully considering plaintiff's first ten filings, the court also held:

> Plaintiff is directed to refrain from submitting improper motions and papers. He wastes the court's limited resources by submitting a continuous stream of improper filings, and has impeded the orderly processing of this and other actions.

Id. at 9.

The court noted in its SCRNORD that Grissom's filings and attachments other than his Complaint included grievances or allegations of mail mishandling; denial of his wheelchair in segregation; denial of access to the prison law library and a legal assistant; denial of medical treatment for chronic medical conditions; challenges to other, unrelated disciplinary incidents; limited privileges in segregation; limitations on provision of indigent writing and mailing supplies, the taking of legal materials

3

from his cell without notice, forced prison transfer and harassment since filing this lawsuit; failure of prison officials to control excessive noise by inmates in segregation, his need for protection from other inmates, and other subsequent occurrences at the LMHCF. Plaintiff was informed in the SCRNORD, with specific references to each of these potential claims, that they were not included in his Complaint, had not been added by the filing of a proper "Amended Complaint," and they were not properly joined in this action as they were not shown to relate to the incident at the EDCF on August 27, 2008. In addition, plaintiff was informed that he had not alleged involvement in these claims by a named defendant. He was further informed that "in order to litigate these claims in federal court," he "must file separate civil rights complaints."[2]

In the SCRNORD, the court cited Rules 18(a) and 20(a)(2) of the Federal Rules of Civil Procedure on joinder, and explained that plaintiff could not join different actions against different parties which represent entirely different factual and legal issues. The court further explained that requiring adherence to the rules on joinder of parties and claims prevents the sort of "morass" that a multiple claim, multiple defendant prisoner suit presents as well as prevents prisoners from "dodging" the fee obligations for each separate civil action filed in federal court and the "three strikes provision" of the Prison Litigation Reform Act. Id. at 7 (citing George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007)).

Unfortunately, Mr. Grissom has not followed most of the court's

---

[2] Plaintiff was also informed that any new complaint he submitted must allege dates, names of persons who actually participated in the denial of his rights, and other pertinent facts in support; and must be submitted upon forms provided by the court. Id. at 9.

4

directions in its SCRNORD.  Instead, he has submitted another stream of 30 additional pleadings, most of which are not necessary or proper filings and many of which continue to refer, without proper amendment, to unrelated claims that in any event would not be properly joined.  He has also continued to include many legal quotes from cases, despite being advised to omit his legal citings and concentrate on providing supporting facts.  The court has carefully reviewed each of Mr. Grissom's additional filings, letters, and attachments, despite any noncompliance and impropriety, and finds that most do not comply with the SCRNORD entered on August 24, 2009. The court further finds that, with few exceptions, the content of these filings are not responsive to the SCRNORD.

**CLAIM OF EXCESSIVE FORCE**

The court has carefully examined Mr. Grissom's filings since the SCRNORD to determine whether or not he has provided sufficient, additional facts to support the claims in his Complaint, as ordered.[3]  With respect to his claim of excessive force, the court finds that plaintiff has failed to cure a crucial deficiency in this claim that was pointed out in the SCRNORD.  He stated in his Complaint that he was injured when he was tackled, restrained, and carried by the "Doomsquied (sic)" during a forced removal from his cell.  He still fails to specify which named defendant, if any, took

---

[3] The filing of a civil complaint appropriately based upon a specific incident or incidents is not, as Mr. Grissom apparently believes, a gateway for plaintiff to then complain in that case regarding previous or subsequent unrelated claims.  The court regrets the delay in completing the screening process in this case.  However, it is a direct result of Mr. Grissom's failure to follow the court's directions and, in particular, his utter failure to limit his submissions to the claims raised in the Complaint and to addressing the deficiencies in those claims.

acts that actually caused the injuries to his nose and face during this forced move.[4]

Mr. Grissom alleged in the Complaint that defendant Jackson sprayed him with pepper spray and called a "Condition 30." However, the court found in the SCRNORD that these allegations against Jackson, taken as true, were insufficient to state a claim of excessive force, given Grissom's other statements and exhibits indicating he had thrown a cup of water and hit Jackson, was being combative, disruptive, very disrespectful, and refused to obey orders and to be restrained. Plaintiff has alleged no additional facts showing either that defendant Jackson used more force than was reasonably necessary under these circumstances or that Jackson applied the pepper spray and called a Condition 30 other than in a "good faith effort" to restore institutional order.[5] The court

---

[4] Plaintiff makes no effort in his filings to name the person or persons who actually caused his broken nose and facial abrasions on August 27, 2008. Nor does he allege that he has been unable to discover names. Instead, in his "Motion 'Supplement to Complaint'" (Doc. 25), he mainly discusses a separate incident in 2009 when he refused to "give up his Rubbermaid bowls and tumblers" and to be restrained. He complains that Officer Travnicek pointed pepper spray at him and threatened to use the "dooms squad." He names the correctional officers involved, and alleges the squad watched him. He also claims he then cut himself, and was denied immediate medical treatment for the cut. Plaintiff's allegations regarding the 2009 incident do not supply any of the necessary additional facts in this case and do not establish the personal participation of any named defendant in the 2008 incident.

[5] In his subsequent filings, plaintiff has not described any other acts taken by defendant Jackson during the relevant incident and, in particular, has not described any acts by Jackson that could conceivably have caused his broken nose and facial abrasions. The court notes he does mention Jackson in Doc. 25. In this pleading filed four months after the deadline for response, plaintiff moves for "reinstatement of his claim," but appears to be attempting to file a Fourth Supplement in response to the court's SCRNORD. In this "Supplement" he mainly alleges facts regarding the unrelated incident in June 2009 and attaches grievances on that event. In the midst of these irrelevant allegations and more unnecessary legal quotes, he makes the following statements:

> CSI D. Jackson was disciplined for his conduct involving excessive use of physical force against inmate on August 27 2008. Inmate Anthony D. Jones . . . was liven in B-2-Cell 157, when CSI D Jackson an J. Quidachay of segregation both has assault (Jones) while he was in handcuffs behind his back. . . .
>
> CSI Sergeant Jackson was disciplined for his conduct useing of

6

concludes that plaintiff's claims of excessive force must be dismissed because plaintiff has failed to either specify which already-named defendant caused his broken nose and facial abrasions, or to name as defendant or defendants that person or persons. The court dismisses this claim without prejudice.

**CLAIM OF DENIAL OF MEDICAL TREATMENT**

The court has carefully examined plaintiff's filings since the SCRNORD to determine whether or not he has alleged sufficient, additional facts to support the claim in his Complaint that he was denied medical treatment for his broken nose and facial abrasions after the incident of August 27, 2008. The court finds that plaintiff has failed to cure the deficiencies in this claim that were pointed out in the SCRNORD.

In its SCRNORD, the court found plaintiff's allegation that Dr. Bokor provided no treatment the day of the incident was conclusory, and that plaintiff's own allegations and exhibits indicated instead that Dr. Bokor had administered three hites of inhaler medication and had examined his nose and face immediately after the incident. Plaintiff has not disputed these findings. In his First Supplement (Doc. 13) plaintiff makes the additional allegations, without providing dates, that he requested treatment for his broken nose but defendant Jackson denied him access to medical personnel because

---

physical force against Inmate Grissom on 8-27-08.

Doc. 25, at 14. Plaintiff also alleges that Jackson was demoted from cell house sergeant to COI, but Warden Roberts restored his rank to COII and returned him "to the cell house" when Grissom went to Crisis Level, which was in June, 2009. The court has considered this supplemental material and finds it does not amount to factual allegations indicating that defendant Jackson or any named defendant caused Grissom's nose and facial injuries in June 2008.

7

"officers on the shift" would not allow him to make out his medical request to see Dr. Bokor. He also alleges that when Jackson was not working "on Friday & Saturdays" he had another inmate contact Dr. Bokor, who "stated that she couldn't do anything to fix (Grissom's) broken nose because it has been broken twice before and it wouldn't do any good to fix it." These additional allegations are read with plaintiff's allegations in the Complaint. The court finds that plaintiff's factual allegations, taken as true, fail to state a claim of denial of necessary medical treatment by defendant Dr. Bokor, particularly in light of Grissom's new allegations that he was prevented from requesting treatment from Dr. Bokor and that in her opinion further treatment was not warranted and would be ineffective. The court also finds that Mr. Grissom still fails to allege that any particular treatment was prescribed or medically necessary for his broken nose beyond the immediate examination that was provided. His own lay opinion that additional treatment was necessary is simply not enough. The court concludes that the facts alleged by plaintiff, as opposed to his conclusory allegations, indicate nothing more than his disagreement with Dr. Bokor's assessment that no other treatment was necessary. As the court advised Mr. Grissom in the SCRNORD, a mere difference of opinion between an inmate and the medical care professional over the adequacy of a medical diagnosis or the treatment provided is not a sufficient basis for an Eighth Amendment claim. The prisoner's right is to necessary medical care, not the care he personally desires or believes is needed. At most, Mr. Grissom might have a state tort claim for negligence or medical malpractice against Dr. Bokor, which must be litigated in state court.

The court has carefully considered Mr. Grissom's new allegation that defendant Jackson prevented him from making out a request for medical treatment and thereby deprived him of necessary medical treatment for his broken nose. However, logically, this allegation also fails as an Eighth Amendment claim due to Grissom's failure to provide sufficient additional facts indicating that any additional treatment was prescribed or obviously necessary. Plaintiff was specifically informed of this deficiency in the SCRNORD.

Plaintiff has added allegations that he "was unable to stand or walk" on his own and was "google-eyed." However, he does not suggest how these "conditions" made it obvious to any defendant that medical treatment was required for his broken nose. He had been sprayed with pepper spray and his eyes were black and swollen. He has alleged several times elsewhere that he generally has difficulty standing and walking due to his COPD and other ailments, to the extent that he claims to require a wheelchair. In any event, Mr. Grissom does not name the defendant who observed him with obvious, serious symptoms, and describe that person's actions or inactions on a date certain that prevented Grissom from submitting a medical request.

Plaintiff's legal quotations regarding excessive force and medical treatment, while not incorrect,[6] provide no factual support for his claims. The court concludes that plaintiff's filings in response to the court's SCRNORD fail to state sufficient additional facts to support an Eighth Amendment claim of denial of medical

---

[6] Mr. Grissom's apparent ability to gather, understand, and quote correct legal authority suggests that he is not incapable of understanding either the legal standards or directions set forth in the court's SCRNORD.

treatment in connection with the August 2008 incident.

A complaint that contains a "short and plain statement" of facts evincing a federal constitutional claim is all that is required to initiate an action in federal court. Mr. Grissom instead filed a rambling complaint with all sorts of inserts and attachments and followed that with a continuous stream of motions and other filings and attachments. His allegations are a seemingly endless diatribe against a great array of prison employees, based upon all sorts of unrelated events and grievances, at various locations, over a matter of years. His complaint may contain many facts, but does not contain "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." See Ashcroft v. Iqbal, 129 U.S. 1937, 1949, 173 L.Ed.2d 868 (2009)(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). A plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555; see also Ashcroft, 129 S.Ct. At 1949 (A complaint will not suffice if it tenders naked assertions devoid of further factual enhancement). Furthermore, conclusory allegations are "not entitled to the assumption of truth." Id. at 1950. The court finds that when it accepts as true the very few factual allegations made by Mr. Grissom, and disregards his conclusory, "formulaic," and irrelevant allegations, he has failed to state a claim that is plausible on its face against any named defendant.

**OTHER CLAIMS**

In his First Supplement and several other filings, plaintiff repeatedly complains that he is being denied medical treatment, not

for his broken nose, but for "COPD." His allegations are of intermittent denial of prescribed breathing treatments.[7] The court finds that Mr. Grissom's allegations of denial of treatment for his COPD and other chronic medical conditions are completely unrelated to the incident upon which the instant Complaint is based. It follows that these allegations provide no factual support for his claim of denial of treatment for his broken nose. In total disregard of the court's explicit admonitions and instructions on amendments and improper joinder, Mr. Grissom again made numerous other allegations in his filings subsequent to the SCRNORD that are unrelated to the claims in his Complaint. Many of these unrelated claims are repeats of ones already addressed in the SCRNORD. The unrelated, and therefore irrelevant claims, discussed by Mr. Grissom in his subsequent filings include: he was taken off breathing treatments by Dr. Bokor when he was asymptomatic; he was denied a wheelchair in isolation and fell; in July 2008 he was not allowed to have personal property in segregation; since his arrival at LMHCF in July 2009 he has been denied medical care; he has been "subjected to sexual abuse verbally and & maliciously" by "a staff officer" and "a CCS Clinic employee;" he was told by Runnels that he had to pay to mail grievances to the SOC office; in 2009 "all his copy of docket text" was taken while he was out of his cell, no report was left, and administrative responses indicated nothing was taken from his

---

[7] Plaintiff generally alleges in this Supplement that he has "had problems" with Dr. Bokor and Nurse Morris refusing his breathing treatment. However, he also provides an exhibit of an administrative response from the Secretary of Corrections (SOC) indicating Grissom has been and continues to be examined and treated for his COPD, and that on occasion he has been non-compliant. Thus, the facts Grissom alleges are not sufficient to state a claim of denial of medical treatment for COPD. If he is able to allege sufficient additional facts, he may file a separate complaint based upon this claim.

11

cell; in January 2010 court documents were missing from his cell after he was in the yard and no report was left and other similar incidents; his rights were violated in the June 2009 disciplinary incident discussed earlier herein including that prison officials failed to control wall pounding by inmates in segregation and blamed him for the pounding; in January 2010 he was denied his H1N1 flu shot, he has missed treatments because he is subjected to strip searches each time he leaves and returns to segregation; in January 2010 he complained about Officer Long wanting to "pop wheelies" with his wheelchair and Long retaliated by writing a disciplinary report; in 2010 he was not provided a shower for 3 weeks; his personal property was taken for exercising his right to be free from cruel and unusual punishment; he was threatened by another segregation inmate and neither he nor the inmate was moved because prison officials said the two have no contact; he has informed prison officals at LCMHF of threats and they have failed to do anything to protect him; in 2006 while in LCF he was inadvertently given sulfa drugs to which he is allergic by Dr. Stanton; in March 2006 Nurse Viana refused to give him a breathing treatment; in March 2006 his wheelchair was taken and not replaced and he was forced to walk to meals and meds line because Nurse Taylor said he intentionally broke his chair and was capable of walking; on March 17, 2010, he was denied medical care by Nurse Abel; Nurse McClair took measurements and said he did not qualify for a breathing treatment; and he has been denied postage, paper, envelopes, and copying services because he has exceeded the limit for indigent supplies. The court finds that these claims were not included in the Complaint, have not been added by the filing of a proper "Amended Complaint," and they are

not properly joined in this action as they are not shown to relate to the incident at the EDCF on August 27, 2008. For these reasons and those stated in the court's SCRNORD, all unrelated claims discussed by plaintiff in his filings are dismissed, without prejudice. In order to litigate these claims in federal court," Mr. Grissom "must file separate civil rights complaints" on forms provided by the court naming proper defendants and alleging facts sufficient to state a federal constitutional claim.[8]

**PENDING MOTIONS**

The court has considered plaintiff's Motion to Appoint Counsel Doc. 22) and his motions for discovery (Docs. 38, 39). Since the court has determined upon screening that this action must be dismissed, all pending motions are moot. Plaintiff is not automatically entitled to appointment of counsel in a civil rights action for money damages, and certainly not in one that fails to state a claim. Furthermore, with respect to plaintiff's motions for discovery, the court finds that the persons from whom discovery is sought have not yet been served in this case. Moreover, plaintiff does not show that Roberts is obliged under Rule 26, Fed.R.Civ.P., to make disclosures at this juncture. In addition, plaintiff's requests for interrogatories are over broad, and no showing is made that plaintiff made any attempt to obtain these materials by other means.

---

[8] Most of Mr. Grissom's discussions of unrelated incidents and grievances, even if presented in a proper Amended Complaint, are devoid of basic factual content including dates, places, and allegations showing personal participation by named defendants. Many fail to evince a federal constitutional claim and have no place in a federal complaint.

**ABUSIVE FILINGS**

Mr. Grissom's filings in this case are prime examples of a type of disjointed, "kitchen-sink" complaint with abusive motions and filings, which the court suspects are the product of an inmate with a compulsive or other mental disorder. There is some indication in the record that Mr. Grissom suffers from such a disorder. Fortunately, the majority of inmate litigants do not produce such filings, but the few that do create a serious management problem for the courts. The sheer volume and disarray of Mr. Grissom's filings made it very difficult and time-consuming to extract the few sentences he included that actually were relevant to the claims in his Complaint. Such abusive filings undoubtedly interfere with the court's normal course of business while doing little to serve the interests of justice. Another problem accentuated in these types filings is how the court avoids improperly providing legal advice to inmates like Mr. Grissom on all their myriad prison grievances, and yet gives them the requisite opportunity to correct deficiencies in their pleadings.

Mr. Grissom has no prospects of accumulating funds in his inmate account, and thus the filing fee obligations are no deterrent. He is forewarned however, that if he files another "kitchen-sink" type complaint or submits other improper, abusive papers in the future, this court has authority to fashion restrictions upon his filings. Those restrictions may include disregarding any pleading he files that does not conform to the instructions and admonitions he was given, but ignored, in this case. The court will also consider assigning a strike to each claim raised by him that would qualify as a strike if raised in a separate

complaint.

The administrative grievance history of abusive inmate filers also frequently reveals, as does Grissom's here, incessant and often procedurally improper or substantively unnecessary grievance filings that assuredly also present a serious management problem for prison institutions. These inmates often complain, as does Mr. Grissom, that their grievances are not being properly processed or addressed and that they are illegally being denied writing and mailing materials including postage, contrary to their indigent status. An indigent inmate has no right, constitutional or otherwise, to an unlimited supply of writing and mailing materials including free postage so that he or she may submit abusive or frivolous grievances, administrative complaints, civil complaints, or other motions and pleadings in federal or state courts. Thus, prison officials do not act illegally when they limit the amount of materials provided free of charge to each indigent inmate. The monthly limits set by the Kansas Department of Corrections which apply to Mr. Grissom are not shown to be the least bit unreasonable. If an inmate is frequently mailing a large number of administrative complaints and legal papers, it is not unreasonable to suspect that he is not pursuing non-frivolous matters but is abusing the administrative grievance or judicial processes as well as the funds intended to provide access to all indigent inmates. It is not unreasonable to require such an inmate to demonstrate his entitlement to excess free materials. Mr. Grissom alleges no facts indicating that prison officials have acted in an arbitrary or capricious manner by limiting his writing and mailing materials or access to copy services. Any claims regarding such limitations are

dismissed as frivolous.  Furthermore, Mr. Grissom has not alleged facts establishing actual injury, which is a necessary element of a denial of access claim, and his filings utterly belie any such claim.

Mr. Grissom has repeatedly asked the clerk and court for copies of most of his voluminous filings.  Indigent inmates are generally provided free copies of materials filed in their cases upon request, but most do not abuse that privilege.  The court denies any requests for copies that are currently pending in this case.[9]  Mr. Grissom was previously directed to create and maintain copies of all his filings for his own records.  He was informed that hand-written copies are acceptable, and thus the denial of copy services did not excuse him from this obligation.  Mr. Grissom would not be short of writing and mailing supplies including postage if he properly limited his submissions.

**SUMMARY**

In sum, the court finds that Mr. Grissom has failed to state facts sufficient to support a claim of cruel and unusual punishment under the Eighth Amendment.  Accordingly, this action is dismissed under 28 U.S.C. § 1915 (e)(1)(2)(B).

**IT IS THEREFORE ORDERED** by the court that plaintiff's claims against defendants Roberts, McNickle, Thompkins, and Sherman are

---

[9] In order to obtain copies in the future of any materials he files with this court, Mr. Grissom must submit a request to the clerk specifying materials by case and docket number and must state the reasons he is requesting free copies including what use he intends to make of the copies and why his own records do not include the requested copies.

dismissed for failure to allege sufficient facts showing their personal participation.

**IT IS FURTHER ORDERED** that the two remaining claims in plaintiff's Complaint are denied for failure to state facts sufficient to support a federal constitutional claim, and that this action is dismissed pursuant to 28 U.S.C. § 1915 (e)(1)(2)(B).

**IT IS FURTHER ORDERED** that all other unrelated claims discussed by plaintiff in his numerous filings are dismissed, without prejudice.

**IT IS FURTHER ORDERED** that all plaintiff's pending motions are denied as moot.

**IT IS FURTHER ORDERED** that plaintiff is assessed the full filing fee for this action of $350.00.[10]

The clerk is directed to transmit a copy of this Order to the finance office where plaintiff is currently confined.

**IT IS SO ORDERED.**

Dated this 9th day of September, 2010, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge

---

[10] Plaintiff was notified in the SCRNORD that this fee is to be collected from his inmate account as funds become available and that he is to cooperate fully with his custodian in authorizing such disbursements.